IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE R. SANCHEZ-LAUREANO<br><br>Plaintiff,<br><br>v.<br><br>THE COMMONWEALTH OF PUERTO RICO, ET AL.,<br><br>Defendants | CIVIL NO.: 07-1172 (JAG/MEL) |

**OPINION AND ORDER**

**I.   PROCEDURAL BACKGROUND**

On March 1, 2007, *pro se* plaintiff José R. Sánchez-Laureano ("Sánchez-Laureano") filed this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against: (1) the Commonwealth of Puerto Rico ("Commonwealth"); (2) the Department of Justice of the Commonwealth of Puerto Rico ("Department of Justice"); (3) the Special Investigations Bureau of the Department of Justice ("SIB"); (4) the Parole Board of the Commonwealth of Puerto Rico ("Parole Board"); (5) the Puerto Rico Police Department ("PRPD"); (6) the Department of Corrections and Rehabilitation of the Commonwealth of Puerto Rico ("DCRPR"); (7) the Corrections Administration Electronic Surveillance Program ("ESP"); (8) the Corrections Administration Auxiliary Administrator in Program and Services ("AAPS"); and (9) an entity identified as the "Liaison Officers with the Victims and Witnesses of Crime Program" ("LOVWCP") (collectively, "defendants").[1] Plaintiff

---

[1] On February 25, 2008, the court dismissed without prejudice the complaint as to other co-defendants, namely: (1) Hon. Aníbal Acevedo-Vilá, Governor of the Commonwealth of Puerto Rico; (2) Hon. Kenneth

alleges that defendants violated his constitutional rights under the *ex post facto* clauses of the U.S. and the Commonwealth Constitutions by applying to him retroactively several Puerto Rico statutes. Plaintiff requests the court to order defendants to cease and desist in the application of said statutes. Plaintiff further requests money damages for salary or wages lost while incarcerated, revenues lost to his personal business, and not less than three million dollars in punitive damages. Docket No. 2.[2]

On February 1, 2008, defendants moved to dismiss the complaint on *res judicata* and collateral estoppel grounds alleging that plaintiff's claims have been previously adjudicated by the Supreme Court of Puerto Rico. Docket No. 26. Plaintiff filed a "motion to strike" defendants' motion to dismiss on February 20, 2008. Docket No. 30. For the reasons stated below, the motion to dismiss is granted.

## II.   FACTUAL BACKGROUND

The *pro se* complaint in this case contains only a few factual details of plaintiff's claims. Plaintiff is an inmate at the Correctional Facility 1072 in Bayamón, Puerto Rico, where he serves a

---

McClintock-Hernández, President of the Senate of the Commonwealth of Puerto Rico; (3) Hon. José F. Aponte-Hernández, President of the House of Representatives of the Commonwealth of Puerto Rico; (4) Ana Teresa Dávila-Laó, Esq., President of the Parole Board of the Commonwealth of Puerto Rico; (5) Hon. Miguel A. Pereira, Secretary of the Department of Corrections and Rehabilitation and of the Corrections Administration of the Commonwealth of Puerto Rico; (6) Hon. Pedro Toledo-Dávila, Superintendent of the Puerto Rico Police Department; and (7) Hons. Roberto Sánchez-Ramos and Salvador Antonetti-Stutts, Attorney General and Solicitor General of the Commonwealth of Puerto Rico, respectively; and (8) Hons. Federico Hernández-Denton, Efraín Rivera-Pérez, Francisco Rebollo-López, Liana Fiol-Matta, and Anabelle Rodríguez-Rodríguez, justices of the Supreme Court of the Commonwealth of Puerto Rico. See Docket No. 31. On February 8, 2008, the court dismissed the complaint against the late Hon. Jaime B. Fuster, Associate Justice of e Supreme Court of Puerto Rico. Id. at 1, n.1.

[2] AAPS and LOVWCP are identified in the caption of the complaint, but are not included in § II (B) of the complaint, where the defendants in this case are listed. See Docket No. 2. Said entities, however, were served with summons, answered the complaint and appeared in the Motion to Dismiss filed by defendants on February 1, 2008. Docket Nos. 5, 10 and 26.

José R. Sánchez-Laureano, v.  The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

sentence under the jurisdiction of the Corrections Administration of the Commonwealth ("Corrections Administration"). Docket No. 2, at 2, § II. The complaint does not provide any information as to when plaintiff was sentenced, for what crime or crimes he was sentenced and what is the term of incarceration.[3]

It can be inferred from plaintiff' allegations in the complaint that at some point in time, he was allegedly granted the benefit of participating in the ESP and released from prison. Said benefit was later revoked and plaintiff was reincarcerated. Docket No. 2, at 7, § VI, ¶ C.[4] Plaintiff claims that, in doing so, defendants applied to him the following statutes, among others: (1) the Bill of Rights of Victims and Witnesses of Crimes, as amended, P.R. Laws Ann., tit. 25, §§ 973 et seq.; (2) the Organic Act of the Corrections Administration, as amended ("OACA"), P.R. Laws Ann., tit. 4, §§ 1101 et seq.;[5] and (3) the Penal Code, as amended, P.R Laws Ann., tit. 33, §§ 4629 et seq. Plaintiff also asserts that the application of said statutes to him configures a violation of Section 12 of the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico and Section 8 of

---

[3] In the motion to dismiss, however, defendants explain that on 1982 plaintiff was convicted of first degree murder and sentenced to ninety nine years of imprisonment. Docket No. 26, at 2, § II.

[4] Defendants state in the motion to dismiss that the benefit was granted on 2001, but that he was returned to prison for violating the conditions of the program in 2005. Docket No. 26, at 2, § II. On July 14, 2005, the Corrections Administration held an administrative hearing regarding the revocation of plaintiff's participation in the ESP, where it was determined that he had indeed violated the conditions of the program. Nonetheless, the Corrections Administration recommended that plaintiff be allowed to participate in the ESP due to his good behavior prior to the incident that led to the revocation of the benefit. Despite this recommendation, plaintiff was never reinstated to the program. Id.

[5] Law No. 49 of May 26, 1995, P.R. Laws Ann. tit 4, §1136a ("Law 49"), amended the OACA granting authority to the Corrections Administration to establish electronic surveillance, diversion, treatment and rehabilitation programs and to determine which persons are eligible to participate in said programs.

3

José R. Sánchez-Laureano, v. The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

Article 1 of the U.S. Constitution, which prohibit *ex post facto* laws, because the statutes were enacted after he was sentenced and therefore were applied to him retroactively. Docket No. 2, at 8-9, § IX, ¶¶ A, B.

Plaintiff also alleges that he filed the corresponding claims and grievances with the DCRPR and with the Commonwealth of Puerto Rico's Court of First Instance, Bayamón Part, and Court of Appeals. Docket No. 2, at 6-7, § VI, ¶¶ A-C. According to plaintiff, the DCRPR, Puerto Rico's Court of First Instance, and Court of Appeals "have found no grounds to revoke and deny plaintiff's participation" in the ESP. Id., at 7, ¶ C. Plaintiff, however, continues imprisoned.

### III.   Motion to Dismiss Standard

"When a plaintiff complaining of civil rights violations is representing himself, his complaint must be read with an extra degree of solicitude." Rivera Borrero v. Rivera Correa, 93 F.Supp.2d 122, 123 (D.P.R. 2000). Dismissal of a *pro se* complaint is not warranted unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.'" Id. Under this generous standard, the court takes plaintiff's allegations as true and construes them in the light most favorable to his claims. LaChapelle v. Berkshire Life Inc. Co., 142 F.3d 507, 508 (1st Cir. 1998). Nevertheless, a litigant's exercise of his right to self-representation does not exempt him from complying with the relevant rules of procedural and substantive law. Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir.1983); Brewster v. Nassau County, 349 F.Supp.2d 540, 545-546 (E.D.N.Y. 2004).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the

José R. Sánchez-Laureano, v. The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

court must limit its focus to the allegations of the complaint. Litton Indus., Inc. v. Colón, 587 F.2d 70, 74 (1st Cir. 1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . " Id.

An evaluation of the merits of a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor. Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996). Dismissal under Rule 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Thus, a dismissal for failure to state a claim can only be upheld if, after giving credence to all well pleaded facts and making all reasonable inferences in the plaintiff's favor, the factual averments do not justify recovery on some theory asserted in the complaint. Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).

In order to survive a motion to dismiss, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Although all inferences must be made in plaintiff's favor, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3

Recently, the Supreme Court held in Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955 (2007), that in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007)(quoting Twombly, 127 S.Ct. at 1967). "While Twombly does not require heightened

5

José R. Sánchez-Laureano, v.  The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Torres v. Bella Vista Hospital, Inc., 523 F.Supp.2d 123, 133 (D.P.R. 2007), quoting Twombly, 127 S.Ct. at 1965.

Because Twombly involved a antitrust-conspiracy complaint, "significant 'uncertainty as to the intended scope of the Court's decision [in Twombly ]' persists, ... ,  particularly regarding its reach beyond the antitrust context. Weisbarth v. Geauga Park Dist., 499 F.3d 538, 541 (6th Cir. 2007), quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).  Similarly, Margo Caribe, Inc. entailed claims brought under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2). Despite said uncertainty, several courts have applied the plausibility standard announced in Twombly and applied in Margo Caribe, Inc. to cases involving claims brought under Section 1983.  See e.g., Alvarado-Sánchez v. First Hosp. Corp., No. 07-1272, 2008 WL 141756 (D.P.R. Jan 11, 2008); Marcano-Betancourt v. Puerto Rico, No. 06-1400, 2007 WL 2245740 (D.P.R. Aug. 1, 2007); Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)  (applying the plausibility standard in the context of a motion to dismiss Iqbal's Section 1983 claims based on qualified immunity); Watts v. Florida Int'l Univ., 495 F.3d 1289, (11th Cir. Aug.17, 2007) (applying Twombly's standard to a Section 1983 action for termination from a hospital practicum which ultimately precluded receipt of a master's degree).

José R. Sánchez-Laureano, v. The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

### III.  Legal Analysis

Plaintiff brought this action pursuant to Section 1983 for the alleged violation of his constitutional rights under the *ex post facto* clauses of the U.S. and Puerto Rico Constitutions. Defendants have requested dismissal of the complaint alleging that the claims contained therein are barred by the doctrines of *res judicata* and collateral estoppel.  Although *res judicata* and collateral estoppel are affirmative defenses which are waived if not pleaded in the answer to a complaint, under certain circumstances they may be entertained for the first time at the motion to dismiss stage.  In re Sonus Networks, Inc, Shareholder Derivative Litigation, 499 F.3d 47, 56 (1st Cir. 2007); In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).  In this case, defendants did not raise the *res judicata* and collateral estoppel as affirmative defenses in their answer to plaintiff's complaint.  See Docket No. 10.  Nevertheless, since plaintiff has not opposed the procedure and the court discerns no prejudice, the merit, if any, of defendants' arguments will be considered by the court.  In re Sonus Networks, Inc., Shareholder Derivative Litigation, 499 F.3d 47, 56 (1st Cir. 2007) (citing Rodríguez v. Baldrich, 628 F.2d 691, 692 n.2 (1st Cir. 1980)).

Defendants claim that the Puerto Rico Supreme Court has already adjudicated plaintiff's claims against him.  According to defendants, the Puerto Rico Supreme Court "concluded that the application of Law 49 to plaintiff did not violate the protection against *ex post facto* laws, and that the revocation of the benefit of the [ESP] in plaintiff's case was proper."  Docket No. 26, at 3, 9-10. In order for the court to determine whether *res judicata* or collateral estoppel bars this case, the court must examine the extent of the previous litigation of plaintiff's claims in the courts of the

7

José R. Sánchez-Laureano, v.  The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

Commonwealth.

On December 3, 1982, plaintiff was convicted of first degree murder and sentenced to ninety-nine years of prison. In 2001, the Corrections Administration granted him the benefit of participating in the  ESP and released him from prison. On May, 2005, plaintiff was returned to prison for violating the conditions of the ESP.  On July 14, 2005, the Corrections Administration held an administrative hearing regarding the revocation of plaintiff's participation in the ESP, where it was determined that he had indeed violated the conditions of said program.  Nonetheless, the Corrections Administration's examining officer who conducted the hearing recommended that plaintiff be allowed to participate in the ESP due to his good behavior prior to the incident that led to the revocation of the benefit. Despite this recommendation, plaintiff was never reinstated to the program. Docket No. 28, Exhibit 1, at 1-3.

Plaintiff then filed an action in the Court of First Instance, Bayamón Part, claiming that the Corrections Administration had not followed the recommendation issued by the Corrections Administration's examining officer.  Plaintiff also alleged that the Corrections Administration had not issued a final decision with respect to said recommendation within the term established by the regulations applicable to the proceedings for revocation of an inmate's participation in the ESP.  On October 27, 2005, the Court of First Instance held a hearing to determine the merits of plaintiff's claims.  During the hearing, officials from the Corrections Administration notified plaintiff of its decision regarding plaintiff's participation in the ESP and the court dismissed plaintiff's complaint. Id., at 3-4.

8

José R. Sánchez-Laureano, v. The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

Plaintiff then appeared *pro se* to the Court of Appeals alleging that the Corrections Administration had not released him from prison, contrary to the July 14, 2005 resolution issued by the examining officer. The Corrections Administration alleged that even though said resolution recommended that plaintiff be reinstated to the ESP, the recommendation was untenable because the concession of the benefit to plaintiff in 2001 was an illegitimate or *ultra vires* act inasmuch plaintiff's conviction of murder made him ineligible to participate in the ESP, pursuant to Law 49. On January 5, 2006, the Court of Appeals ordered the Corrections Administration to put into effect the July 14, 2005 resolution, and reinstate plaintiff to the ESP on the ground that the application of Law 49 to plaintiff violated the *ex post facto* clauses of the U.S. and Puerto Rico Constitutions. Docket No. 28, Exhibit 1, at 4-6, Exhibit 2, at 4-7.

The Corrections Administration filed a writ of *certiorari* with the Supreme Court of Puerto Rico. The Corrections Administration alleged that the Court of Appeals had erred, among other grounds, in determining that the application of Law 49 to plaintiff violated the *ex post facto* clause of the Constitution of the Commonwealth and that plaintiff's participation in the ESP was protected by said clause even though electronic surveillance is an administrative privilege and not a substantive right. Docket No. 28, Exhibit 1, at 6.

On June 2, 2006, the Supreme Court issued a judgment reversing the Court of Appeals' decision. After a detailed exposition of the history and development of the applicable laws concerning the ESP and the constitutional protections against *ex post facto* laws, the Supreme Court of Puerto Rico determined that the application of Law 49 to plaintiff did not activate said protection.

José R. Sánchez-Laureano, v.  The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

Relying on González Fuentes v. E.L.A., 2006 T.S.P.R. 44, the Supreme Court of Puerto Rico explained that, when evaluating whether the application of a statute implicates the constitutional clause regarding *ex post facto* laws, it is important to determine whether the statute that is being applied retroactively is more onerous than the statute that was in effect when the crime was committed. In this case, the Supreme Court of Puerto Rico noted that when plaintiff committed murder, the ESP did not exist.[6] Therefore, insofar Law 49 excludes murder convicts (such as plaintiff) from participating in the ESP, the application of said exclusion to him would not be more onerous or prejudicial than the statute that was in effect when he committed murder. Id., at 15-16.

Furthermore, the Supreme Court of Puerto Rico also determined that insofar the concession of the ESP benefit to plaintiff in 2001 had been an administrative mistake (because said statute excluded murder convicts such as plaintiff), and administrative errors do no create rights and can be corrected at any time by the Commonwealth, the Corrections Administration could correct this mistake by revoking plaintiff's participation in the ESP. Id., at 16-17.

With this background, the court now examines whether *res judicata* or collateral estoppel bar the present suit.

    A.    *Res Judicata*.

"In general, the doctrines of *res judicata* and collateral estoppel serve important purposes. They prevent the waste of judicial and party resources through vexatious and multiple lawsuits and

---

[6] The Supreme Court noted that the Corrections Administration established the ESP on July 14, 1989. Docket No. 28, Exhibit, at 15.

José R. Sánchez-Laureano, v.  The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

encourage the rendering of consistent, reliable adjudications." Esteves v. Ortíz Álvarez, 678 F.Supp. 963, 965 (D.P.R. 1988).

The Supreme Court has determined that under "the federal full faith and credit statute, 28 U.S.C. § 1738, federal courts in Section 1983 actions must accord the same preclusive effect to state court judgments-both as to claims and issues previously adjudicated-as would be given in the state court system in which the federal court sits." Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 83-84 (1984).  Thus, *res judicata* operates as an absolute bar to the relitigation of the same cause of action between parties (or their privies).  Westcott Construction Corp.v. Firemen's Fund of New Jersey, 996 F.2d 14, 16 (1st Cir. 1993) (quoting Griffin v. State of R.I., 760 F.2d 359, 360 (1st Cir. 1985)). Accordingly, this court must give full faith and credit to final judgments rendered by the Commonwealth's courts. See Báez-Cruz v. Municipality of Comerío, 140 F.3d 24, 28 n. 1 (1st Cir. 1998).

In order to determine the preclusive effect to be given in this court to a judgment rendered by a Commonwealth court, the court must look to Puerto Rico law.  See 28 U.S.C. § 1738; see also Cruz v. Melecio,  204 F.3d 14, 18 (1st Cir. 2000).

Article 1204 of the Puerto Rico Civil Code states, in pertinent part, that:

> In order that the presumption of the *res judicata* may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

P.R. Laws Ann. tit. 31, § 3343.  Although this provision only refers to *res judicata*,  it encompasses as well collateral estoppel, also termed issue preclusion. Muñiz Cortes v. Intermedics, Inc., 229

11

José R. Sánchez-Laureano, v.  The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

F.3d 12, 14 (1st Cir. 2000); Báez-Cruz, 140 F.3d at 29; Texaco Puerto Rico, Inc. v. Medina, 834 F.2d 242, 245-46 (1st Cir. 1987) (citing A&P Gen Contractors v. Asociación Caná, Inc., 110 D.P.R. 753 (1981). "Accordingly, the Supreme Court of Puerto Rico has held that when an issue 'essential to the prior judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive in subsequent litigation among the parties.'" Muñiz Cortés v. Intermedics, Inc., 229 F.3d 12, 13 (1st Cir. 2000) (citing Félix Davis v Vieques Air Link, 892 F2d 1122, 1124-25); see also  A&P Gen. Contractors, 110 D.P.R. at 762; Pereira v. Hernández, 83 D.P.R. 160 n.7 (1961). Thus, *res judicata* principles operate to preclude claims that were or could have been raised in a previous suit for which judgment has been rendered.

The court now examines whether each of the elements required by article 1204 for the application of *res judicata* or collateral estoppel are present in this case.

**1.    Identity of things.**

For purposes of article 1204 of the Puerto Rico Civil Code, "there is an identity of things only 'if when deciding on the object of a complaint, the judge may contradict a prior decision affirming a right arisen or arising from, or a right affirmed by a prior court decision.'" Giles Toro v. University of Puerto Rico, 183 F.Supp.2d 457, 464-65 (D.P.R. 2001) (citing Futura Dev. Corp. v. Centex Corp., 761 F.2d 33, 43); see also A&P Gen. Contractors 110 D.P.R. at 764-65. "For *res judicata* purposes, 'thing corresponds basically to the object or matter over which the action is exercised' and '[i]dentity of 'things' is found when a decision in the second action contradicts the prior adjudication'" Giles Toro, 183 F.Supp.2d at 464-65, citing  A & P Gen. Contractors 110 D.P.R. at 765; see also Lausell

12

José R. Sánchez-Laureano, v.  The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

Marxuach v. Díaz de Yañez, 103 D.P.R. 533, 535 (1975).

A review of the local judicial proceedings in this case reveals that the Supreme Court of Puerto Rico determined that the application of Law 49 to plaintiff did not violate the protection against *ex post facto* laws afforded by the Constitution of the Commonwealth of Puerto Rico, and that the Corrections Administration properly revoked plaintiff's benefit of participating in the ESP. Docket No. 28, Exhibit 1, at 15-17).  In this case, if the court were to find that the Corrections Administration violated plaintiff's protection against *ex post facto* laws guaranteed by the Constitution of the Commonwealth of Puerto Rico or that the Corrections Administration improperly revoked plaintiff's participation in the ESP, said ruling would constitute a direct contradiction of the judgment rendered by the highest court of the Commonwealth.  Therefore, the court finds that there is an identity of things between the matters over which this case revolves and the matters adjudicated through the judgment by the Puerto Rico Supreme Court.  See Giles Toro, 183 F.Supp.2d at 464-65; Futura Dev. Corp., 761 F.2d at 43; Lausell, 103 D.P.R. at 535; A&P Gen. Contractors, 110 D.P.R. at 762.

  **2.  Identity of causes of action.**

The term "cause of action", for purposes of article 1204 of the Puerto Rico Civil Code, means "the principal ground, the origin or exceptions raised and decided, and it must not be mistaken for the means of proof nor for the legal grounds of the claims adduced by the parties." Giles Toro, 183 F.Supp.2d at 465 (citing Lausell, 103 D.P.R. at 536).  "Although a single cause of action can manifest itself in several different claims, the requisite identity is achieved if all such theories

13

José R. Sánchez-Laureano, v.  The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

concern 'the same operative nucleus of fact.'"  Giles Toro, 183 F.Supp.2d at 465.

An examination of the Puerto Rico Supreme Court's decision makes it readily apparent that the causes of action, facts and claims litigated by plaintiff in the Commonwealth's courts are, in essence, the same as the causes of action and claims presented by plaintiff in the complaint in this case.  As shown by the factual background contained in the judgment rendered by the Puerto Rico Supreme Court, plaintiff's causes of action in the Commonwealth's courts originated and revolved around the fact that in 2001, the Corrections Administration granted him the benefit of participating in the ESP and released him from prison until 2005, when it revoked him said benefit and returned him to prison for violating the conditions of the ESP. Hence, in his previous litigation in the Commonwealth's courts, plaintiff alleged virtually the same claims that he alleges in this case, namely that the Corrections Administration retroactively applied to him several state statutes (in particular, Law 49), in violation of the *ex post facto* clause of the Commonwealth's Constitution.[7]

The causes of action, facts and claims are essentially the same as ones asserted by plaintiff in the case at bar; they arise out of the same actions or the "same operative nucleus of fact", seek redress for the same wrong, and rely on the same factual and legal basis.  Therefore, the court determines that the requirement of identity of causes of action for *res judicata* to apply is met in this

---

[7] Arguably, plaintiff is now invoking his rights under the U.S. Constitution, rather than the Constitution of Puerto Rico, regarding the application of *ex post facto* laws.  However, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." Apparel Art International, Inc. v. Amertex Enterprises Ltd., 48 F.3d 576, 583 (1st Cir. 1995) (emphasis added) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).  During the state court proceedings plaintiff could have raised allegations regarding the *ex post facto* application of laws under the U.S. Constitution, and indeed, the appellate court from the Commonwealth alluded to the possibility of a violation to said Constitution.  Docket 28, Exhibit 2 at 4-5.

14

José R. Sánchez-Laureano, v. The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

case.

### 3.     Identity of parties.

There is identity of parties pursuant to article 1204 of the Puerto Rico Civil Code "whenever 'the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same.'" P.R. Laws Ann. tit. 31, § 3343.  Although Puerto Rico's mutuality requirement is strictly worded, on a number of occasions the Puerto Rico courts have not read this requirement literally." Giles Toro, 183 F.Supp.2d at 465; see also Republic Sec. Corp. v. Puerto Rico Aqueduct and Sewer Auth., 674 F.2d 952, 955-56 (1st Cir. 1982); De León v. Colón, 42 D.P.R. 22 (1931) (permitting preclusion based on previous action that included additional defendants).

According to the caption of the judgment of the Supreme Court of Puerto Rico, Sánchez-Laureano was the only plaintiff in the state case and the Corrections Administration was the only defendant.[8]  Sánchez-Laureano is also the only plaintiff in this case and the only defendants that remain are: (1) the Commonwealth; (2) Department of Justice; (3) SIB; (4) Parole Board; (5) PRPD; (6) DCRPR; (7) ESP; (8) AAPS; and (9) LOVWCP.  Notwithstanding, although these defendants are included in § II (B) of the complaint, the same contains no specific allegations as to any of them (except for the references to the revocation of plaintiff's participation in the ESP).  See Docket No.

---

[8] Said judgment does not contain any mention to the Commonwealth of Puerto Rico, or the Department of Justice, SIB, Parole Board, PRPD, DCRPR, ESP, AAPS and LOVWCP as defendants in that case.

15

José R. Sánchez-Laureano, v.  The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

2. As to the Corrections Administration, the complaint merely alleges that "[t]he application of the statutes to the plaintiff configures an ex post facto application of the same; an unconstitutional and illegal act on the part of the Corrections Administration and any other governmental institution that may proceed in this manner." Id, at 9, § IX, ¶ B.  Said entity is also named as a defendant in the caption of the complaint in this case.  Thus, it would seem that the Corrections Administration is the only defendant that this case and the case before the courts of Puerto Rico have in common.[9] Furthermore, defendants have not alleged or placed this court in position to determine whether any or all of the remaining defendants in this case are legal representatives of, or are "jointly bound" to, the Corrections Administration, as required by article 1204 of the Puerto Rico Civil Code.  In light of the above, the court can not conclude that the requirement of identity of parties has been met in this case.

    **B.**    **Collateral estoppel.**

The conclusion that *res judicata* is not dispositive of this case, however, does not end the inquiry as to whether plaintiff's claims are precluded by the previous case that transpired in the courts of the Commonwealth of Puerto Rico.  Even though it is not clear whether all the defendants were parties in the state court proceedings, they need not have been in order to invoke issue preclusion, also termed collateral estoppel.  Giles Toro, 183 F.Supp.2d at 466.  If the requirement that there be perfect identity of the parties is not met, a party may still invoke collateral estoppel.

---

[9] The Corrections Administration, however, is not listed in  § II (B) of the complaint and has not been served with summons.

16

José R. Sánchez-Laureano, v. The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

Sánchez-Núñez v. Puerto Rico Elec. Power Authority, 509 F.Supp.2d 137 (D.P.R. 2007); Báez-Cruz, 140 F.3d 24; Schneider v. Colegio de Abogados de Puerto Rico, 670 F.Supp. 1098 (D.P.R. 1987); Díaz-Buxó v. Trías Monge, 451 F.Supp. 552 (D.P.R.1978) (citing Cardillo v. Zyla, 486 F.2d 473, 475-76 (1st Cir. 1973) ("However, identity of the parties and mutuality of estoppel are no longer required in applying collateral estoppel. 'What is required is that the party against whom the plea is asserted . . . have been a party or in privity with a party to the prior adjudication.'"); see also A&P Gen. Contractors, 110 D.P.R. at 762. "Under the related doctrine of collateral estoppel, ..., when an issue of fact or law is actually litigated and solved through a valid and final judgment, and the determination as to that issue is essential to the judgment, such a finding is deemed conclusive in a subsequent action between the parties, even if it deals with a different claim. If the issue is, indeed, determinative of the outcome of the first case, it will preclude further litigation 'in a suit on a different cause of action involving a party to the first case.'" Estrada v. Sea-Land Service, Inc., 939 F.Supp. 129, 134 (D.P.R. 1996) (citing Allen, 449 U.S. at 94); see also Venegas-Hernández v. Peer, 283 F.Supp.2d 491, 495 (D.P.R. 2003). Furthermore, a defendant may use collateral estoppel defensively even if he was not a defendant in the prior litigation. See Parklane Hosiery Company, Inc. v. Shore, 439 U.S. 322, 328 (1979); Cowhig v. Chief of Chaplains, U.S. Army, 958 F.2d 361 (1st Cir. 1992) (Table) (citing Lynch v. Merrell-National Laboratories, 830 F.2d 1190, 1192 (1st Cir. 1987); 18 James Wm. Moore et al., Moore's Federal Practice ¶ 132.04[2][c][i] (3ed. 1997) ("Defensive issue preclusion or collateral estoppel arises when a defendant seeks to foreclose a plaintiff from relitigating an issue previously decided against that plaintiff. Nonmutual defensive

17

José R. Sánchez-Laureano, v. The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

issue preclusion arises when a defendant seeks to foreclose the plaintiff from litigating an issue that plaintiff previously litigated and lost against another defendant.").[10]

In this case, a review of the judgment rendered by the Supreme Court of Puerto Rico shows that the issues of whether the Corrections Administration properly revoked plaintiff's benefit of participating in the ESP and whether said revocation amounted to a retroactive application of Law 49 in violation of the plaintiff's constitutional protection against *ex post facto* laws was actually and fully litigated in the Puerto Rico Court of First instance and Court of Appeals, and ultimately adjudicated by the highest court of the Commonwealth of Puerto Rico. It is evident that plaintiff had a full and fair opportunity to fully litigate his claims, resulting in the Supreme Court of Puerto Rico finding no merit in any on those claims. As stated before, said claims are very similar, if not identical, to plaintiff's claims in this case. Moreover, the Supreme Court of Puerto Rico's judgment is valid and final, and therefore the determination as to the issues contained therein is conclusive in

---

[10] Summarizing the similarities and differences between *res judicata* and collateral estoppel, this court has explained that:

> While the two doctrines have differences, it is important to remember that they are related and many concepts are applicable to both doctrines. There are differences, however. *Res judicata* refers to claim preclusion, and prevents the same parties from relitigating claims which have been adjudged finally on the merits. Collateral estoppel is related to *res judicata*, but its focus is narrower and its preclusive effect wider. Referred to as issue preclusion, this doctrine prevents relitigation in a later suit of an issue of fact or law necessary to a final judgment in a prior suit on a different cause of action. The narrower focus is on specific issues, rather than entire claims or causes of action. A potentially wider scope of preclusion exists, though, because under certain circumstances, preclusion may be invoked by one not a party to the prior litigation.

Esteves, 678 F.Supp. at 965. In the context of a civil rights claim, "Section 1983 does not operate as a device to collaterally attack adverse decisions in state court. As long as plaintiff was accorded a full and fair opportunity to litigate an issue in state court, the doctrine of collateral estoppel applies to [Section] 1983 claims brought in federal court." Id. at 967.

this action. Essentially, what plaintiff attempts to do with this case is to have the proverbial "second bite at the apple" which is exactly what the doctrine of collateral estoppel is designed to prevent. See Johnston v. Arbitrium (Cayman Islands) Handels AG, 198 F.3d 342, 348 (2nd Cir. 1999); Levich v. Liberty Central School Dist., 361 F.Supp.2d 151, 159 (S.D.N.Y. 2004); see also Otero-Varcalcel v. Puerto Rico Indus. Development Co., Civil No. 04-1868, 2005 WL 2095782 (D.P.R. Aug. 30, 2005). Thus, the court determines that plaintiff is collaterally estopped from litigating the claims the claims asserted in this case.[11]

### IV. Conclusion

In view of the foregoing, the motion to dismiss (Docket No. 26) is hereby GRANTED.[12]

IT IS SO ORDERED.

---

[11] Most, if not all, of the claims asserted in the complaint may also be dismissed on alternative grounds, such as Eleventh Amendment immunity, and because most of the defendants (e.g., the Commonwealth, the DCRPR, the PRPD, the Department of Justice) are not "persons" for purposes of Section 1983. See Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Brown v. Newberger, 291 F.3d 89 (1st Cir. 2002) (A state and its agencies are not "persons" within the meaning of Section 1983); see also Rosa-Ruiz v. Gonzalez-Galoffin, Civil No. 06-1093, 2007 WL 2768694 at *4 (D.P.R. Sept. 20, 2007) ("We note at the outset that neither a state nor a state agency, such as the Department of Justice of Puerto Rico, is a "person" within the meaning of § 1983.") Correa-Ruiz v. Calderon-Serra, 411 F.Supp.2d 41, 47 (D.P.R. 2005) (dismissing Section 1983 claims against PRPD as an arm of the state); Ramos Bonilla v. Vivoni, 259 F.Supp.2d 135, 141 (D.P.R. 2003) ("In terms of the Puerto Rico Police Department, it has been clearly established that it is an arm of the state, and therefore, immune from suit under the Eleventh Amendment."); Padilla Cintron v. Rossello Gonzalez, 247 F.Supp.2d 48, 57 (D.P.R. 2003) (Eleventh Amendment sovereign immunity barred claims against DCRPR). Even though the court has discretion to raise the issue of Eleventh Amendment immunity *sua sponte*, see Varela-Fernandez v. Burgos, 81 F.Supp.2d 297, 300 (D.P.R. 1999); Suárez Cestero v. Pagán Rosa, 996 F.Supp. 133, 142 (D.P.R. 1998), the court chooses not to make a determination as to said issue at this moment. See Parella v. Ret. Bd. Of R.I. Employees' Ret' Sys., 173 F.3d 46, 55 (1st Cir. 1999) ("[W]hile courts have the discretion to raise Eleventh Amendment questions *sua sponte*, Article III does not obligate them to do so."); Wis. Dep't of Corrs. v. Schacht, 524 U.S. 381, 388 (1998) ("Unless the State raises the matter [of sovereign immunity], a court can ignore it.").

[12] The government must still file on or before March 5, 2008, the translated copies of the decisions issued by the courts of the Commonwealth of Puerto Rico as ordered on February 19, 2008. See Docket No. 29.

19

José R. Sánchez-Laureano, v. The Commonwealth of Puerto Rico, et al.,
Civil No. 07-1172 (JAG/MEL)
Opinion and Order

    San Juan, Puerto Rico, this 25th day of February, 2008.

                                                 s/Marcos E. López
                                                 UNITED STATES MAGISTRATE JUDGE